JEAN DZIEDZIC AND LOUIS DZIEDZIC, PLAINTIFFS-APPELLANTS, v. ST. JOHN'S CLEANERS AND SHIRT LAUNDERERS, INC., A CORPORATION, AND JOSEPH DINGLE, DEFENDANTS-RESPONDENTS, AND IVAN WINGER AND EVELYN WINGER, JOINTLY, SEVERALLY AND/OR IN THE ALTERNATIVE, DEFENDANTS.

Argued November 6, 1968—Decided January 20, 1969.

*Mr. William J. Murray* argued the cause for defendants-respondents, St. John's Cleaners and Shirt Launderers, Inc., a corporation, and Joseph Dingle.

*Mr. Frank Lerner* argued the cause for plaintiffs-appellants (*Messrs. Schwartz, Horowitz & Krivitzky,* attorneys).

The opinion of the court was delivered by

PROCTOR, J. This automobile negligence case arose out of an intersection collision in which the plaintiff Jean Dziedzic was injured. She was a passenger in a delivery truck operated by defendant Dingle, an employee of defendant St. John's Cleaners and Shirt Launderers, Inc., owner of the vehicle. The truck collided with a car driven by defendant Winger. In Mrs. Dziedzic's suit against the three defendants, the jury found that Dingle, the driver of the truck, had negligently caused the collision and her ensuing injuries, and returned a verdict of $6,000.00 against him and his employer, St. John's. Winger was absolved of responsibility. On the

appeal of Dingle and St. John's, the Appellate Division reversed and remanded for a new trial, holding that the trial court had erroneously granted the plaintiff's motion to strike the defense of contributory negligence. 99 *N. J. Super.* 565. We granted plaintiff's petition for certification. 51 *N. J.* 580 (1968).

The validity of plaintiff's motion to strike the defense of contributory negligence is the sole question on this appeal. At the trial, the defense contended that Mrs. Dziedzic had been negligent in riding in the laundry delivery truck, a vehicle equipped with only one seat for the driver. The driver's seat was elevated; between the seat and the truck's sliding door was "the well" of the truck on a lower level, where Mrs. Dziedzic was standing at the time of the collision. She testified that she was "holding on to the dashboard and there was like a, piece of pipe or something, I was holding on to that."

The trial judge held that Mrs. Dziedzic's conduct had not contributed to the cause of the *collision.* He further held that a jury could find that in riding in the truck as she did, plaintiff was not exercising reasonable care. However, with regard to the plaintiff's alleged contribution to her *injuries,* since no evidence had been introduced by either party on this point, the judge held that the jury could only speculate as to which portion of plaintiff's injuries was due to her position in the truck. He therefore struck the defense of contributory negligence.

In reversing the plaintiff's judgment, the Appellate Division ordered a new trial which would be restricted to the question of the causal relation between plaintiff's asserted negligence and her injuries, holding that the plaintiff must bear the risk of a failure of the evidence to provide a reasonable basis for apportioning the damages. 99 *N. J. Super.,* at p. 571.

At the outset, we agree with the trial court, and it is not otherwise contended, that the plaintiff's position in the truck did not in the slightest contribute to the cause of the colli-

sion. It is also undisputed that the jury could find, as it did, that defendant's negligent driving was a proximate cause of plaintiff's injuries. We assume, as did the Appellate Division, that the trial judge was correct in ruling that the jury could find that the plaintiff had not exercised reasonable care in standing in the truck, even though it might well be that in permitting the plaintiff to stand in the truck, defendants should be barred from asserting her contributory negligence in any aspect. Therefore, the only controversy centers upon the role of plaintiff's conduct as an alleged proximate cause of her injuries, concurrent with the defendant's negligence.

To best understand the dispute we must briefly mention the traditional framework for this kind of tort litigation. A plaintiff bears the burden of proving defendant's negligence, and that such negligence was a proximate cause of plaintiff's injury. In New Jersey, once the plaintiff's burden has been met, the defendant bears the burden of pleading and proving plaintiff's negligence, and that such negligence contributed to the injury as a proximate cause. *R. R.* 4:8–3. Contributory negligence is an affirmative defense. See *Pangborn v. Central Railroad Co. of New Jersey,* 18 *N. J.* 84 (1955); *Kaufman v. Pennsylvania Railroad Co.,* 2 *N. J.* 318 (1949).

The question in the present case as the Appellate Division framed it was as follows: Once both the plaintiff and the defendant have met their respective burdens, *i. e.,* that there is evidence that both parties were negligent and that both parties' negligent conduct contributed to the injury as a proximate cause, who then bears the burden of apportionment? Through an analysis of several sections of the *Restatement of Torts 2d,* the Appellate Division concluded that the plaintiff bears the risk of adducing evidence which is specific enough for a jury to reasonably apportion responsibility for the injuries. We hold that the conclusion of the Appellate Division was reached prematurely. That is, regardless of which party is to bear the burden of apportionment, in the present case the defendants have not met their traditional

burden of proving the causal link between plaintiff's alleged negligent conduct and her injuries.

■■ Meeting the burden of causation is a precondition for deciding the apportionment issue. Since contributory negligence is an affirmative defense, the defendants must show that Mrs. Dziedzic would have been injured more seriously by standing in the truck as she did than she would have been had she ridden as an automobile passenger normally rides, in a seated position.[1] This the defendants did not show. For all the jury might have known, Mrs. Dziedzic could have been injured to a *greater* extent if she had been seated. A jury could do no more than speculate on the facts presented. The trial court was therefore correct in striking the affirmative defense of contributory negligence.

The analogy to recent litigation involving the seat belt defense is helpful here. It has been said that in most situations it is better to fasten a seat belt than to ignore it. See Roethe, *Seat Belt Negligence in Automobile Accidents,* 1967 Wis. L. Rev. 288.[2] Even if we assume, as we do *for the purpose of the argument only,* that a reasonable man would fasten an available seat belt, nevertheless those cases which make the same assumption hold that the only way the seat belt defense can go to the jury is if the defendant comes forward with specific evidence demonstrating the causal

---

[1] We cannot conclude that merely by being in the truck Mrs. Dziedzic thereby should be barred from recovery in any accident which might occur, regardless of its cause. For example, if a rock fell on the truck, totally demolishing it, Mrs. Dziedzic should be able to recover against the individual who negligently pushed it down the mountainside. Each act of negligence carries with it a zone of risk which would contribute to injuries under certain circumstances. However, the defendant must prove the causal connection.

[2] Nevertheless, the author concludes: "The social utility of wearing a seat belt must be established in the mind of the public before failure to use a seat belt can be held to be negligence. Otherwise the court would be imposing a standard of conduct rather than applying a standard accepted by society." Roethe at 296–297. See *Miller v. Miller,* 273 N. C. 228, 160 S. E. 2d 65 (1968), holding that under normal conditions failure to fasten a seat belt does not constitute negligence.

link; *i. e.,* the relationship between failure to fasten the belt and the plaintiff's injuries. See *Barry v. Coca Cola Co. et al,* 99 *N. J. Super.* 270, 275 *(Law Div.* 1967) ; *Bentzler v. Braun,* 34 *Wis.* 2d 362, 363, 386, 387, 149 *N. W.* 2d 626, 640, 641 (1967) ; *Tom Brown Drilling Co. v. Nieman,* 418 *S. W.* 2d 337, 340–341 *(Tex. Civ. App.* 1967) ; *Kavanagh v. Butorac,* 221 *N. E.* 2d 824 *(Ind. App.* 1966) ; *Annotation,* 15 *A. L. R.* 3d 1428 (1967) ; Note, *Failure to Fasten Seat . Belt Is Not Contributory Negligence as a Matter of Law,* 31 Albany L. Rev. 373, 378 (1967). The discussion by Chief Justice Currie of the Supreme Court of Wisconsin in *Bentzler v. Braun, supra,* is illustrative :

"While it is apparent that these statistics [in the Roethe article, *supra*] cannot be used to predict the extent or gravity of injuries resulting from particular automobile accidents involving persons using seat belts as compared to those who are not using them, it is obvious that, on the average, persons using seat belts are less likely to sustain injury and, if injured, the injuries are likely to be less serious. On the basis of this experience, and as a matter of common knowledge, an occupant of an automobile either knows or should know of the additional safety factor produced by the use of seat belts.

\*  \*  \*  \*  \*  \*  \*  \*

"We therefore conclude that, in those cases where seat belts are available and there is evidence before the jury indicating causal relationship between the injuries sustained and the failure to use seat belts, it is proper and necessary to instruct the jury in that regard. A jury in such case could conclude that an occupant of an automobile is negligent in failing to use seat belts. *In the instant case, however, because of the lack of any evidence of causation, the trial judge properly refused the requested instruction* [pertaining to the elimination or reduction of damages by plaintiff's failure to use the available seat belt]." (Emphasis added.)

Similarly, in the present case plaintiff's motion to strike contributory negligence was properly granted because of the lack of any evidence of causation.

We do not agree with the Appellate Division's holding because we think it derives from a mistaken premise. The Appellate Division assumed that the defendants' burden of proving causation had already been met; that the evidence

presented a factual case justifying a finding of contributory negligence and causal connection with the plaintiffs injuries taken as a whole. *99 N. J. Super.*, at *pp.* 570–571. This assumption is not supported by the record. As we have said above, no evidence had been offered by the defendants as to causation. Mrs. Dziedzic's alleged carelessness in standing in the well of the truck could have been responsible for none or all of her injuries. By assuming that plaintiff's conduct was a contributing cause of her injuries, the Appellate Division relied on sections of *Restatement, Torts 2d* which apply to injuries caused by the combined action of two or more negligent parties. Of key importance to the Appellate Division was § 465 and two of the appended comments, which read as follows:

"Causal Relation Between Harm and Plaintiff's Negligence
  (1) The plaintiff's negligence is a legally contributing cause of his harm *if, but only if, it is a substantial factor in bringing about his harm* and there is no rule restrictiog his responsibility for it.
  (2) The rules which determine the causal relation between the plaintiff's negligent conduct and the harm resulting to him are the same as those determining the causal relation between the defendant's negligent conduct and resulting harm to others."
  "a. The rules determining the causal relation between the defendant's negligent conduct and resulting harm to others are stated in §§ 430–461.

\*       \*       \*       \*       \*       \*       \*       \*

  "c. In particular, the rules stated in § 433 A as to the apportionment of harm to different causes are applicable in cases of contributory negligence. Where the harm is single and indivisible, it is not apportioned between the plaintiff and the defendant, in the absence of a statute providing for such division of the damages upon an arbitrary basis. Where, however, there are distinct harms, or a reasonable basis is found for the division of a single harm, the damages may be apportioned, *and the plaintiff may be barred only from recovery for so much of the harm as is attributed to his own negligence.* Such apportionment is commonly made, under the damages rule as to avoidable consequences, where the plaintiff suffers an original injury, and his negligence consists in failure to exercise reasonable care to prevent further harm to himself. See § 918. The apportionment may, however, be made in other cases, as where, for example, the plaintiff has contributed to the pollution of a stream, along with one or more defendants.

"Such apportionment may also be made where the antecedent negligence of the plaintiff is found not to contribute in any way to the original accident or injury, but to be a substantial contributing factor in increasing the harm which ensues. There must of course be satisfactory evidence to support such a finding, and the court may properly refuse to permit the apportionment on the basis of mere speculation." (Emphasis added.)

There is no question that plaintiff's conduct would be "a substantial factor in bringing about his harm" in a case where a defendant merely scratches plaintiff's arm and the plaintiff, after he knew or should have known that it was not healing normally, delays for an unreasonable time in going to a doctor, by then suffering from gangrene; or if the plaintiff pollutes a stream which the defendant has also polluted. Nevertheless, defendant bears the burden of proving the delay and its unreasonableness, and he bears the burden of proving that plaintiff also polluted the stream. This is part of his affirmative burden of establishing contributory negligence, set forth in the *Restatement* § 477 and followed in New Jersey. *Kaufman, supra,* 2 *N. J.,* at *p.* 318. As to the burden of apportionment, once the defendant has submitted sufficient evidence as to causation, the statement in § 465, comment (c), that "plaintiff may be barred only from recovery for so much of the harm as is attributed to his own negligence," clearly indicates that it is the defendant who also has the burden of carving out that portion of the damages which is to be attributed to the plaintiff. See 2 Harper and James, *Torts,* § 20.3, at *p.* 1130 (1956); McCormick, *Damages* § 33, at *p.* 130 (1935); but see, Prosser, *Torts* § 64, *pp.* 433–434 (1964).

The *Restatement* § 433 (A) and comment (f), and § 433 B, as in § 465, refer to situations where the burden of establishing causal relationship has already been met, *i. e.,* more than one negligent party has contributed to the injury. These provisions are set forth in the margin.[3] Of course, the plain-

---

[3] §433 A. Apportionment of Harm to Causes

(1) Damages for harm are to be apportioned among two or more causes where

tiff must convince the jury that the defendant's negligence was a proximate cause of the plaintiff's injuries. By referring to the doctrine of avoidable consequences, however, § 433 A, comment f, indicates as did § 465, comment c, that the defendant must bear the burden of apportionment in mitigating the damages. See 2 Harper and James, *Torts,* and McCormick, *Damages, supra;* see also, *McCurdy v. Union Pac. R. R. Co.,* 68 *Wash.* 2d 457, 467, 413 *P.* 2d 617, 623 (1966); *Annotation,* 134 *A. L. R.* 242 (1941). With regard to the apportionment of responsibility for plaintiff's

(a) there are distinct harms, or

(b) there is a reasonable basis for determining the contribution of each cause to a single harm.

(2) Damages for any other harm cannot be apportioned among two or more causes.

\*   \*   \*   \*   \*   \*   \*   \*

f. Contributory negligence. There are also cases where apportionment may be made between the plaintiff and the defendant when the plaintiff himself is at fault. This is true, for example, where the plaintiff has contributed to the pollution of a stream, or some other nuisance, along with one or more defendants. The damages rule as to avoidable consequences, stated in § 918, which denies recovery for the aggravation of personal injuries or other harm resulting from the plaintiff's failure to use due care to avoid it after the commission of the tort, frequently requires such apportionment, and is merely an application of the rule stated here. The apportionment is also possible in cases of the last clear chance, as where the plaintiff is struck and injured because of his own negligence, and after he is helpless the injury is aggravated, as for example by the defendant's negligent failure to remove his vehicle from the plaintiff's body"

§ 433 B. Burden of Proof

(1) Except as stated in Subsections (2) and (3), the burden of proof that the tortious conduct of the defendant has caused the harm to the plaintiff is upon the plaintiff.

(2) Where the tortious conduct of two or more actors has combined to bring about harm to the plaintiff, and one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each such actor.

(3) Where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each such actor to prove that he has not caused the harm."

injuries, at no point does the *Restatement* imply that the plaintiff must bear the burden. Once a plaintiff has met his burden by showing that the defendant's negligence was a proximate cause of the plaintiff's injuries, any further procedural barrier to a plaintiff's recovery, in whole or in part, would violate our traditional concept that to avoid liability such defendant must carry the burden of proving the plaintiff's participation in the injuries.

.The judgment of the Appellate Division is reversed and the judgment of the Law Division is reinstated.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*—None.