158 N.J. Super. 158 (1978)
385 A.2d 913
EDWARD HOPPE, PLAINTIFF-RESPONDENT,
v.
JOSEPH L. RANZINI AND FRANK J. MORELLI, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 10, 1978.
Decided March 15, 1978.
*161 Before Judges LYNCH, BISCHOFF and KOLE.
Mr. Joseph Cooney argued the cause for appellant, Joseph L. Ranzini (Richard A. Amdur, attorney).
Mr. Allan Maitlin argued the cause for appellant, Frank J. Morelli (Messrs. Feuerstein, Sachs, & Maitlin, attorneys).
Mr. Andrew M. Rockman argued the cause for respondent (Messrs. Levinson, Conover, Fink & Axelrod, attorneys).
*162 The opinion of the court was delivered by KOLE, J.A.D.
Defendants, who are attorneys, were sued for malpractice. Plaintiff, a passenger in a car owned and operated by Joseph DePoe, was injured when the car was involved in an accident. For the purpose of this appeal, we consider that the only negligent party was DePoe.[1] The malpractice claim was predicated on defendants' failure to file a complaint within the period of the statute of limitations. It was stipulated that DePoe was uninsured and had no assets at the time of the accident or at the date the motion was argued, had an income that did not exceed $45 a week and had been in and out of jail on a number of occasions. Prior to trial both parties consented that the issue here involved be decided as if a motion for summary judgment had been made by defendants. The trial judge denied the motion and held, contrary to defendants' contention, that their liability was not limited to the maximum amount (then $10,000) set forth in the statute relating to the Unsatisfied Claim and Judgment Fund (the Fund). Defendants appeal.[2]
The trial judge ruled that, assuming plaintiff would have obtained a judgment against DePoe, in no event would the damages collectible against the attorneys be limited to the maximum recoverable against the Fund, notwithstanding DePoe's obviously weak financial status at the time of the accident or thereafter. He stated that, had the case been tried before a jury, he would not have submitted the issue of collectibility of a judgment against DePoe, or the extent thereof, for the following reasons: (1) the judgment would *163 be viable for a period of at least 20 years; (2) during that period, by reason of financial success, inheritance or other means, DePoe might have acquired sufficient assets to pay in full the total amount of the judgment that the jury might have awarded against him; and (3) to ask the jury to determine the future with respect to DePoe's likelihood of acquiring assets or otherwise being able to pay the judgment against him would be to require it to indulge in sheer speculation. For these reasons, he determined in advance of the trial that the judgment should not be limited to the $10,000 that plaintiff might have recovered from the Fund.
We affirm the denial of the summary judgment, but hold that the ruling of the court was premature. It should have awaited an appropriate time during trial.
Defendants claimed below, as it is also contended here, that plaintiff's rights to recover must be limited to the $10,000 which he would have received from the Fund had the matter actually been placed in suit and judgment been recovered against DePoe, and that the limitation of DePoe's assets and the extent of his solvency at the time of the accident or the malpractice action must be considered in determining the damages to which plaintiff is entitled in the malpractice action. The argument is that to the extent that any judgment against DePoe would be uncollectible, the damages suffered by plaintiff would not have been proximately caused by defendants' malpractice. To hold otherwise, it is argued, would put plaintiff in a better position by reason of his succeeding in the malpractice action than he would have been in had his claim against DePoe been properly pursued by defendants.
An attorney's duty to his client requires him to exercise the knowledge, skill and ability ordinarily possessed and exercised by members of the legal profession similarly situated. He is bound to exercise a reasonable degree of care and prudence, having reference to the character of the service he undertakes to perform. Failure to file suit before the *164 running of the period of the statute of limitations plainly constitutes malpractice where there is no reasonable justification shown therefor. Passante v. Yormark, 138 N.J. Super. 233, 238-239 (App. Div. 1975), certif. den. 70 N.J. 144 (1976). For the purpose of the motion here involved, defendants admit their negligence in this respect.
The attorney is responsible for the loss proximately caused the client by his negligence. Passanante v. Yormark, supra. The measure of that loss or the amount of damages recoverable against an attorney for such malpractice necessarily depends upon the nature of his undertaking for the client.
If his negligence consists of failing to discover a lien in connection with a search of real estate title, then the damage recoverable is the amount of the lien. Bayerl v. Smyth, 117 N.J.L. 412 (E. & A. 1937); Jacobsen v. Peterson, 91 N.J.L. 404 (S.Ct. 1918), aff'd 92 N.J.L. 631 (E. & A. 1918). See also French v. Armstrong, 80 N.J.L. 152 (S.Ct. 1910). If the attorney is retained to give legal advice, is negligent in that respect and the client pays money to others as a result thereof, he is responsible to the client for the full amount paid, even though the client may have an action for damages against another in connection with the transaction involved. Fabry v. Jay, 104 N.J.L. 617 (E. & A. 1928). If he is negligent in preparing a chattel mortgage so that it later is found to be invalid in a bankruptcy proceeding involving the mortgagor, he is liable for the difference between the amount the client received as a general creditor and the full amount that would have been received had the mortgage been valid. McCullough v. Sullivan, 102 N.J.L. 381 (E. & A. 1926).
However, where, as here, the attorney is retained to conduct litigation against a defendant (hereafter referred to as "the main defendant") and is guilty of malpractice in connection therewith  for example in failing to file a complaint within the statute of limitations  the measure of *165 the loss or damages recoverable by the client appears to be a novel question, at least on the appellate level, in this State.[3]
The rule elsewhere, although not without exception, appears to be that such a malpractice action against the attorney involves a trial within a trial, in which the plaintiff has the burden of proving by a preponderance of the evidence that (1) he would have recovered a judgment in the action against the main defendant, (2) the amount of that judgment, and (3) the degree of collectibility of such judgment. Plaintiff's loss proximately resulting from the attorney's malpractice is deemed to be measured only by the amount of the judgment that could have been collected against the main defendant. To that extent evidence of the main defendant's financial status and solvency may be considered, although it is not entirely clear as to the period of time that should be taken into account for that purpose.
As to the foregoing, see Sitton v. Clements, 257 F. Supp. 63 (E.D. Tenn. 1966), aff'd 385 F.2d 869 (6 Cir.1967); Winter v. Brown, 365 A.2d 381 (D.C. Ct. App. 1976); McDow v. Dixon, 138 Ga. App. 338, 226 S.E.2d 145 (Ct. App. 1976); Baker v. Beal, 225 N.W.2d 106 (Iowa Sup. Ct. 1975); Christy v. Saliterman, 288 Minn. 144, 179 N.W.2d 288 (Sup. Ct. 1970). Cf. Duncan v. Lord, 409 F. Supp. 687 (E.D. Pa. 1976); Allied Productions Inc. v. Duesterdick, 232 S.E.2d 774, including dissenting opinion at 776 (Va. Sup. Ct. 1977); Smith v. Lewis, 13 Cal.3d 349, 118 Cal. Rptr. 621, 530 P.2d 589, including dissenting opinion 118 Cal. Rptr. at 600, 530 P.2d 589 (Sup. Ct. 1975); W.L. Douglas Shoe Co. v. Rollwage, 63 S.W.2d 841 (Ark. Sup. Ct. 1933). See also, 7 Am. Jur.2d, Attorneys At Law, *166 § 190 at 158; Annotation, "Attorney's liability for negligence in preparing or conducting litigation," 45 A.L.R.2d 5 (1956), including discussion and authorities cited at 23, 26, 27-28, 30; Annotation, "Measure and elements of damages recoverable for attorney's negligence with respect to maintenance or prosecution of litigation or appeal," 45 A.L.R.2d 62 (1956), including discussion and authorities cited at 64-66; 2 Dooley, Modern Tort Law, § 33.09 (1977); Coggin, "Attorney Negligence, * * * A Suit Within A Suit," 60 W. Va. L. Rev. 225 (1958); Comment, "Legal Malpractice," 27 Ark. L. Rev. 452 (1973); Comment, "Legal Malpractice in Mississippi", 43 Miss. L. Rev. 691 (1972); Comment, "The Attorney's Liability for Negligence: An Alabama Perspective," 7 Cumb. L. Rev. 68 (1976); Note, "Legal Malpractice  Erosion of the Traditional Suit Within A Suit Requirement," 7 Tol. L. Rev. 328 (1975).
We consider the matter of whether and under what circumstances, if at all, collectibility from the main defendant should be a proper consideration in the award of damages in this type of malpractice action to be of sufficient public importance to warrant its determination only in a full factual setting developed at a trial, rather than on a hypothetical basis, such as that here presented, by way of a ruling on incomplete stipulated facts before trial.
In this State the amount of damages for which a negligent party is liable is that which his negligence was a substantial factor in bringing about. His negligence need not be the proximate cause of such damages. It suffices if it is a proximate cause thereof. The determination of the damages so caused involves the reasonable foreseeability thereof, although not necessarily its precise amount. Where it is certain that some damage has resulted, mere uncertainty as to the amount need not preclude the right to recovery. In that event, it is left to the good sense of the jury, as reasonable men, to determine from the evidence the best estimate that can be made under the circumstances of the amount of compensatory damages. See Rappaport v. Nichols, *167 31 N.J. 188, 203-205 (1959). See also, Dziedzic v. St. John's Cleaners & Shirt Launderers, Inc., 53 N.J. 157 (1969); Betenbaugh v. Princeton Hosp., 50 N.J. 390 (1967); Paolicelli v. Wojciechowski, 132 N.J. Super. 274 (App. Div. 1975) certif. den. 68 N.J. 153, 154 (1975).
In the instant case defendants seek a rule that would require proof of collectibility of the judgment against the main defendant in order to determine the amount of damages to be awarded in a malpractice action involving the negligent conduct of litigation. That rule may effect a change in or departure from the concept of proximate causation and the measure of damages in negligence actions generally, including other kinds of attorney malpractice cases and malpractice suits involving other professions. Whether such a rule should be adopted in this type of attorney malpractice action requires the consideration of many factors, in the light of an actual trial on the merits of the particular case, as hereinafter set forth. That task should be undertaken in the first instance by the trial judge. In the event of an appeal from his judgment, we should have the benefit of a full record upon which to make an appropriate determination.[4]
The rule that should be established may depend upon the nature of the litigation undertaken by the attorney and the reasonable expectations of the client, when the attorney was retained, as to the prospects for success in obtaining and collecting on a judgment against the main defendant. Among other things, evidence as to discussions or correspondence with, or the conduct of, the attorney may be pertinent to this inquiry. Cf. 45 A.L.R.2d supra, at 11, n. 15. See also Fabry v. Jay, supra, 104 N.J.L. at 619-620.
*168 Thus, in the present case it may be of some consequence that plaintiff had or had not been advised by the attorneys that DePoe was in an unsound financial condition and was uninsured, and that recourse might have to be made to the Fund if a judgment was recovered. Again, from the standpoint of limiting the attorneys' liability, a serious question exists as to the relevance or materiality in this case of evidence with respect to the Fund and the statutory provisions relating thereto. The action against DePoe was never instituted. Hence, the conditions before payment from the Fund may be obtained cannot be satisfied. Additionally, the Fund statute, even if applicable, provides some possibility that if the Fund had recovered an amount in excess of $10,000 from DePoe, such excess would be payable to plaintiff. See N.J.S.A. 39:6-69 to 71; 39:6-77.
The rule to be adopted in a particular case should also take into account the fiduciary nature of an attorney's relationship to his client, and the fact that the practice of the law plainly affects the public welfare in a fashion not unlike that of other learned professions, such as physicians. Cf. dissenting opinion in Allied Productions, Inc. v. Duesterdick, supra, 232 S.E. 2d at 776-777; McCullough v. Sullivan, supra, 102 N.J.L. at 384. It should be one that effects a fair balance between the rights of, and burdens on, both the client and the attorney who negligently conducts litigation on the client's behalf.[5]
*169 It is not without significance that had a judgment been obtained against DePoe, it would have been valid for 20 years, and, in an appropriate proceeding, might have been extended for another 20 years. N.J.S.A. 2A:14-5; Ehnes v. Weldon, 13 N.J. Super. 23 (App. Div. 1951), certif. den. 7 N.J. 577 (1951); Twist v. Woerst, 101 N.J.L. 7 (Sup. Ct. 1925). However, such a judgment would have been dischargeable in bankruptcy. Perez v. Campbell, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), and had it been so discharged, DePoe would have been relieved from his loss of driving privileges under the Fund statute. N.J.S.A. 39:6-35. If the judgment were not discharged in bankruptcy, then during the life of the judgment or for a fair period after the trial of the malpractice action, it might be shown that DePoe had the reasonable capacity in some fashion to increase his financial worth and acquire sufficient assets or income to have paid all or part of the judgment against him. Although the amount payable by the Fund with respect to an uninsured person, such as DePoe, conceivably may not be a proper matter to be considered in limiting the recovery against the attorneys, it may very well be material to plaintiff's right to recover damages. It is similar to a showing that the main defendant  DePoe  was covered by insurance, although in a limited amount. If DePoe's financial worth or solvency is to be taken into account, a problem arises as to the date as of which that matter should be determined. Some of the cases seem to use the date of the trial of the malpractice action. See McDow v. Dixon and Sitton v. Clements, supra. Whether this is a proper time span, in view of the life of a judgment, is certainly debatable. Perhaps a reasonable period of time after the date of trial, short of the initial 20-year viability period of a judgment, may be more appropriate.
The fact that many of the matters going to collectibility of a judgment appear to be speculative in nature is not necessarily a bar to having them considered. Subject to appropriate proofs and control and instructions by the *170 court, the trier of facts often considers factors in assessing damages that may be speculative in some degree. See Tenore v. NuCar Carriers, 67 N.J. 466 (1975); Dubil v. Labate, 52 N.J. 255 (1968); Coll v. Sherry, 29 N.J. 166 (1959); Dalton v. Gesser, 72 N.J. Super. 100 (App. Div. 1962). See also, Better Homes, Inc. v. Rodgers, 195 F. Supp. 93, 96 (N.D.W. Va. 1961).[6]
We point to some of the matters that should be considered before the adoption of a rule as the measure of damages in this type of case to guide the trial judge in making a determination in that respect if and when that becomes necessary. There may be others. In any event, as indicated, we do not believe that a final decision should be made in a factual vacuum and, accordingly, have not endeavored to resolve the issue.
The trial of this case should be bifurcated in the event the matter of collectibility of the judgment against the main defendant is still a viable issue. The questions of malpractice and the amount of the judgment that would have been recoverable against DePoe had suit been timely instituted should be tried first. In that trial proof would not be admissible as to DePoe's income, solvency, wealth or assets, or the extent to which his liability was covered by insurance (or the Fund). See Leimgruber v. Claridge Assoc., Ltd., 73 N.J. 450, 456, 458 (1977); Brandimarte v. Green, 37 N.J. 557, 562-563 (1962); Belinski v. Goodman, 139 N.J. Super. 351, 357-358 (App. Div. 1976); Dalton v. Gesser, supra, 72 N.J. Super. at 106. See also, McDow v. Dixon, supra, 226 S.E.2d at 148. If the jury renders a money verdict in that proceeding, defendants, if they so desire, may move for a trial as to the collectibility of the judgment. In that event a further trial, preferably before the same jury (unless a jury is waived), should be held as to such collectibility in order to make a record upon which an ultimate *171 ruling can be made. The factors that we have indicated would be inadmissible in the first proceeding would generally be admissible in the second trial, subject to appropriate rulings and instructions by the judge. The purpose of the second proceeding would be to determine, in accordance with what we have stated, the financial ability of the main defendant, DePoe, to satisfy, in whole or in part, the amount of the judgment that would have been awarded against him. It is the amount so determined that constitutes the damages for which the legal malpractice defendants are liable, provided the trial judge rules, after the second proceeding, that collectibility of the judgment is an appropriate consideration in establishing plaintiff's damages. McDow v. Dixon, supra.
We have concluded that fairness requires that the burden of proof with respect to the issue of collectibility should be upon the attorney defendants, notwithstanding the rule elsewhere that places that burden on plaintiff. Cf. Fosgate v. Corona, 66 N.J. 268 (1974); Dziedzic v. St. John's Cleaners & Shirt Launderers, Inc., supra; Interchemical Corp. v. Uncas Printing & Fin. Co., Inc., 39 N.J. Super. 318, 329 (App. Div. 1956).
We have considered the case of Sproul v. Lloyd, 96 N.J.L. 314 (Sup. Ct. 1921). It is unclear whether the action of the attorney in that case was considered by the court as constituting negligence or malpractice. In any event, to the extent that the case may be construed as holding that collectibility is always an issue where the client sues the attorney for malpractice involving litigation or that the burden of proof of collectibility is on the plaintiff, we refuse to follow it.
The denial of the motion for summary judgment is affirmed. However, because the ruling by the trial judge on the legal issue here involved was premature, further proceedings in this case shall be in accordance with this opinion.
NOTES
[1] We assume that DePoe was involved in a one-car accident and that he and Carl Santo are one and the same person. If this assumption is incorrect, then we consider that Santo was not negligent.
[2] The trial court erroneously certified the denial of the summary judgment as a final order. See R. 4:42-2. We granted leave to appeal nunc pro tunc.
[3] See dictum in Fuschetti v. Bierman, 128 N.J. Super. 290, 298, n. 2 (Law Div. 1974). Where, because of the attorney's negligence, a money judgment is obtained against his client, the damages to be assessed against the attorney might well be the amount of that judgment, even before it is paid by the client. See dissenting opinion in Allied Productions, Inc. v. Duesterdick, 232 S.E.2d 774 (Va. Sup. Ct. 1977). Cf. Fabry v. Jay, supra.
[4] It may well be that no ruling at all on the issue of collectibility of the judgment would be required if the jury awarded damages against the main defendant in an amount that defendants were willing to pay  e.g., less than the $10,000 limit here sought.
[5] We note that it has been held that permitting a limitations period to run on a client's claim justifies disciplinary action against an attorney. In re Crane, 400 Mich. 484, 255 N.W. 2d 624 (Sup. Ct. 1977). But DR 6-101 of the American Bar Association's Disciplinary Rules, permitting discipline of attorneys who fail to act competently, upon which Crane relies, has not been adopted in this State. R. 1:14. See however, the recent amendment to the rules, effective April 1, 1978, adding our Supreme Court's version of DR 6-101, which prohibits a lawyer from (1) handling a matter in such manner that his conduct constitutes gross negligence or (2) exhibiting a pattern of negligence or neglect in handling legal matters generally.
[6] Cf. Bates v. Gambino, 72 N.J. 219, 228 (1977); Harris v. Perl, 41 N.J. 455, 464-465 (1964).