[775 NYS2d 4]

Bruce Lindenman et al., Appellants, v David M. Kreitzer, Individually, Doing Business as, and/or as Partner in Kreitzer & Vogelman, et al., Respondents, et al., Defendant.

First Department, April 6, 2004

APPEARANCES OF COUNSEL

*Jacob D. Fuchsberg Law Firm, LLP (Leslie D. Kelmachter* and *Alan L. Fuchsberg* of counsel), for appellants.

*James E. Musurca* for David M. Kreitzer and another, respondents.

*Daniel W. Pariser*, respondent pro se, and for Pariser & Vogelman, P.C., respondent.

## OPINION OF THE COURT

ELLERIN, J.

This appeal provides us with the opportunity to examine the essential elements in an action for legal malpractice and, more specifically, whether the plaintiff bears a burden of proving the extent to which any judgment awarded in the underlying action could have been collected against the initial wrongdoer. For the reasons that follow, we conclude that the ultimate collectibility of any judgment that could have been obtained in the underlying action is not an element necessary to establish the plaintiff's claim.

Plaintiffs in the instant case retained defendants David Kreitzer and Kreitzer & Vogelman to pursue an action on their behalf against the West Wind Yacht Club in Freeport, New York, for personal injuries sustained by plaintiff Bruce Lindenman on January 28, 1989, as a result of being struck in the forehead with a metal tray of dishes carried by a waiter. A lawsuit was initiated in Supreme Court, Nassau County. However, it was dismissed on April 24, 1992, after defendants, then serving as plaintiffs' counsel, failed to serve a bill of particulars despite a pending order of preclusion dated January 6, 1992 that directed plaintiffs to provide a bill of particulars within 45 days. Although defendant Kreitzer's motion for reargument was denied and the appeal that he had noticed was dismissed by the Second Department after he failed to perfect it, Kreitzer continued until some time in 1997 to represent to plaintiffs that the action was proceeding.

Upon learning that the case had been dismissed years earlier, plaintiffs brought this action for legal malpractice, naming Pariser & Vogelman as successor in interest to the Kreitzer &

Vogelman firm, which had been sold in 1997 to Daniel Pariser and Donald Vogelman (hereinafter P&V). (Defendant Kreitzer was suspended from the practice of law for three years by this Court as of March 20, 1997 [229 AD2d 188 (1997)] and disbarred by this Court as of March 27, 2001 [281 AD2d 35 (2001)].) On the parties' motions for summary judgment, the court held that defendant Kreitzer breached the duty owed to plaintiffs, that defendant Vogelman, as a partner in Kreitzer & Vogelman, was vicariously liable for such breach, and that defendant Pariser's liability, if any, to plaintiffs was limited to his share of the property of the P&V partnership. The court reserved for trial the questions of whether defendant Kreitzer's breach of duty proximately caused the damages alleged by plaintiffs and whether defendant P&V was liable as an alleged successor in interest to defendant Kreitzer & Vogelman.

A nonjury trial was held. Plaintiffs rested their case after three days, on April 13, 2001. Defendants immediately moved for a dismissal on the ground that plaintiffs had not proved their prima facie case of legal malpractice because they had not presented any evidence that a judgment in the underlying personal injury action could have been collected. At plaintiffs' counsel's request, the trial court granted the parties 15 days to brief the issue of whether plaintiffs were required to present evidence of the collectibility of an underlying judgment. Five days later, plaintiffs moved, by order to show cause, to reopen the trial for the purpose of submitting proof on that issue. Defendants opposed on the ground that the motion was untimely and that they would be prejudiced if the trial were reopened because they had had no opportunity to take discovery on an essential element of plaintiffs' case. Plaintiffs' counsel's reply affirmation, dated June 10, 2001, stated that plaintiffs intended to subpoena and call to testify the attorney who represented the yacht club in the underlying action and one or the other of two supervisory employees in the claims department of the club's insurance carrier. The affirmation stated that plaintiffs also intended to introduce into evidence the relevant documents demonstrating that the yacht club was a viable business and that the real estate had been sold in 1999 for $850,000.

The court denied plaintiffs' motion to reopen the trial, on the grounds that plaintiffs had had more than enough time to address the issue of the collectibility of the underlying judgment, given that defendants Kreitzer and Kreitzer & Vogelman asserted it as an affirmative defense in their answer and sought

information pertaining to it in their demand for a bill of particulars and requests for discovery, and that plaintiffs' failure to respond to defendants' requests for information on the issue placed defendants at a disadvantage in their ability to respond to any proof that plaintiffs would offer at a reopened trial. This appeal followed.

While we have held that "[a] trial court's discretion to reopen a case after a party has rested should be sparingly exercised" (*King v Burkowski*, 155 AD2d 285, 286 [1989]), on the record before us, it appears that in the interest of justice, the court, in this nonjury trial, would have been better advised to reopen the case to permit what it considered crucial evidence to be submitted.

▮ However, before we reverse the denial of plaintiffs' motion to reopen the case and remand for further proceedings, we must address the validity of the trial court's dismissal based solely on its finding that plaintiffs failed to meet their burden of proving that if they had prevailed in the underlying action they would have been able to collect on that judgment from the original defendant.

In support of its conclusion that plaintiffs were required to prove collectibility, the court relied on *Larson v Crucet* (105 AD2d 651 [1984]). Defendants cited *McKenna v Forsyth & Forsyth* (280 AD2d 79 [4th Dept 2001], *lv denied* 96 NY2d 720 [2001]) as well as *Larson*. Both cases rely, either directly or through an intervening decision or decisions, on *Vooth v McEachen* (181 NY 28 [1905]) and *Schmitt v McMillan* (175 App Div 799 [1916]) for the proposition that the plaintiff in a legal malpractice action bears the burden of proving that the underlying judgment was collectible. However, the holdings of both *Vooth* and *Schmitt* have been mischaracterized. In both cases, the deficiency of the malpractice action was not the plaintiff's failure to prove that the underlying judgment was collectible but rather that the plaintiff failed to prove the underlying cause of action itself, including the amount of damages flowing therefrom.

In *Vooth*, what was found fatally absent from the plaintiff's case was proof of the value of the claim the attorney was hired to collect. The question of whether the estate would actually have paid the claimed sum did not arise. In *Schmitt*, this Court dismissed the complaint for failure to state facts from which it could be inferred that the plaintiff ever had a cause of action that would have ripened into a judgment had her attorney

proceeded with diligence. Citing *Vooth*, the Court declared, "In an action of this character the plaintiff must allege in his complaint and prove at the trial that but for the negligence of the attorney the plaintiff's claim could or would have been collected. . . . [I]t necessarily follows that sufficient facts must be set forth to show *that the plaintiff had a good cause of action against whom the claim was asserted*" (175 App Div at 801 [emphasis added]). While the phrase, "could or would have been collected," has been read as limiting the damages recoverable in a legal malpractice action to the actual "amount that 'could or would have been collected' in the underlying action" (*see e.g. McKenna, supra* at 82), it is clear from the opinion itself and its reliance on *Vooth* that such was not in fact the holding of *Schmitt* and that that phrase refers not to the collectibility of the judgment but to the ripening of the underlying cause of action into a judgment.

A plaintiff's burden of proof in a legal malpractice action is a heavy one. The plaintiff must prove first the hypothetical outcome of the underlying litigation and, then, the attorney's liability for malpractice in connection with that litigation. As the Fourth Department observed in the *McKenna* case, the requirement of " 'proving a "case within a case" ' . . . is a distinctive feature of legal malpractice actions arising from an attorney's alleged negligence in preparing or conducting litigation" (280 AD2d at 82, quoting *Kituskie v Corbman*, 552 Pa 275, 281, 714 A2d 1027, 1030 [1998]). "It adds an additional layer to the element of proximate cause, requiring the jury to find the hypothetical outcome of other litigation before finding the attorney's liability in the litigation before it" (*id.*). Only after the plaintiff establishes that he would have recovered a favorable judgment in the underlying action can he proceed with proof that the attorney engaged to represent him in the underlying action was negligent in handling that action and that the attorney's negligence was the proximate cause of the plaintiff's loss since it prevented him from being properly compensated for his loss (*see Kituskie v Corbman, supra*, 552 Pa at 282, 714 A2d at 1030).

Of course, an essential element of the plaintiff's case in any legal malpractice action is actual damages, i.e., the injuries he suffered and their value (*see Mendoza v Schlossman*, 87 AD2d 606, 607 [1982]). "Where the injury suffered is the loss of a cause of action, the measure of damages is generally the value of the claim lost" (*Campagnola v Mulholland, Minion & Roe*, 76 NY2d 38, 42 [1990]). Thus, in a malpractice action arising

from an attorney's alleged negligence in preparing or conducting litigation the plaintiff must prove the value of the lost judgment.

It is only after the plaintiff has proved the case within the case, including the value of the lost judgment, that the issue of collectibility may arise. Indeed, a factfinder's judgment in the plaintiff's favor, i.e., the finding that the plaintiff was wronged by the defendant in the underlying action and wronged by the attorney who represented him in that action, is itself a vindication of the legitimacy of the plaintiff's underlying claim and has value regardless of whether it is wholly collectible (*see Smith v Haden*, 868 F Supp 1, 2 [DC 1994]).

■ To the extent that *Larson v Crucet* (105 AD2d 651 [1984]) holds that proof of the collectibility of the underlying judgment is an essential element of the plaintiff's cause of action for legal malpractice, we overrule that decision.

■ We further find that, where relevant, the issue of noncollectibility should be treated as a matter constituting an avoidance or mitigation of the consequences of the attorney's malpractice (*see e.g. Jourdain v Dineen*, 527 A2d 1304, 1306 [Me 1987]) and the erring attorney should bear the inherent risks and uncertainties of proving it (*see Kituskie v Corbman*, 452 Pa Super 467, 474, 682 A2d 378, 382 [1996], *affd* 552 Pa 275, 714 A2d 1027 [1998]; *Power Constructors, Inc. v Taylor & Hintze*, 960 P2d 20, 31 [Alaska 1998]; *Smith v Haden, supra,* 868 F Supp at 2-3). This is particularly appropriate since the legal malpractice action is likely to have been brought years after the underlying events, as in this case, because of the defendant attorney's failure to act timely in the first instance. This necessarily implicates the date or time frame within which noncollectibility should be determined. It might be argued that the most reasonable date is the date of the attorney's malpractice, or the date on which a conclusion to the litigation could reasonably have been anticipated had there been no malpractice. However, consideration must be given to the fact that a New York judgment has a 20-year life span (*see* CPLR 211 [b]; *see also* CPLR 5203 [a] [money judgment initially becomes 10-year lien against property]; 5014 [1] [new 10-year lien available via renewal judgment]) and that, even if the judgment is not collectible at the time of its entry, it may become collectible at any time during that life span.

In New Jersey, where a judgment is valid for 20 years and may be extended for another 20, one appellate court has sug-

gested that an appropriate time span is the length of time between the date of the legal malpractice and the end of a reasonable period of time after the date of the malpractice trial, short of the initial 20-year viability period of a judgment (*Hoppe v Ranzini*, 158 NJ Super 158, 169, 385 A2d 913, 919 [1978]). In any event, the rule to be adopted in a particular case "should be one that effects a fair balance between the rights of, and burdens on, both the client and the attorney who negligently conducts litigation on the client's behalf" (158 NJ Super at 168, 385 A2d at 918).

We find it appropriate to limit the defendant attorney's burden of proving noncollectibility to the period between the date of the legal malpractice and the end of a reasonable period of time after the malpractice trial, short of the full 20-year viability period of a judgment, without prejudice to the plaintiff to present evidence that subsequently becomes available concerning collectibility of the judgment before the expiration of its full life span. Ultimately, the date as of which noncollectibility must be established in a particular case will have to be determined according to the life span of the judgment and any other considerations the trial judge finds relevant in the process of balancing the equities in this aspect of the case.

Accordingly, the order of the Supreme Court, New York County (Louis York, J.), entered on or about November 8, 2001, denying plaintiffs' motion to reopen the nonjury trial and granting defendants' trial motion to dismiss the complaint, should be reversed, on the law, without costs, the complaint reinstated and the matter remanded for further proceedings consistent with this opinion.

TOM, J.P., SAXE, WILLIAMS and MARLOW, JJ., concur.

Order, Supreme Court, New York County, entered on or about November 8, 2001, reversed, on the law, without costs, the complaint reinstated and the matter remanded for further proceedings.